# EXHIBIT A

NYSCEF

**Document List**

New York County Supreme Court

**Index #   652315/2026**

Created on:05/18/2026 10:27 PM

---

Case Caption:    **Raul Brindis et al v. TELEVISAUNIVISION, INC. et al**

Judge Name:

| Doc# | Document Type/Information | Status | Date Received | Filed By |
|------|--------------------------|--------|---------------|----------|
| 1 | SUMMONS + COMPLAINT *Corrected* | Processed | 04/20/2026 | Garcia, R. |

# EXHIBIT A-1

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK

COMMECIAL DIVISION

| | |
|---|---|
| RAÚL BRINDIS, and MARIO GOMEZ,<br><br>                              Plaintiffs,<br><br>        -against-<br><br><br>TELEVISAUNIVISION, INC.,<br>CINDY HILL, individually and as agent of<br>TelevisaUnivision, Inc., and FRANK<br>LAFONTAINE, individually and as agent of<br>TelevisaUnivision, Inc.,<br><br>                              Defendants. | Index No. _____<br><br><br>SUMMONS |

**To the above-named Defendant(s):**

**YOU ARE HEREBY SUMMONED** to answer the Verified Complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis of the venue designated is that Defendant TelevisaUnivision, Inc. transacts business in New York County and a substantial part of the events giving rise to the claims occurred therein.

Respectfully submitted,

**LAW OFFICE OF BOBBY GARCIA, P.C.**
P.O. Box 5729
McAllen, Texas 78502
Telephone:      (956)668-7400
Facsimile:      (956)668-7500
E-Service email: litigation@bobbygarcia.com

**BOBBY GARCIA**
Texas State Bar No. 07645210
New York SBN: 5387485
Federal Bar No.: 14531
**ATTORNEYS FOR PLAINTIFFS**
and
**LESLEY MITCHELL BRIONES**
Texas State Bar No. 24060292
Lesley Briones
c/o Adán Briones
9 Greenway Plaza, Ste. 2800
Houston, TX 77046
E-Service Email: lesleybriones@gmail.com
**CO-COUNSEL FOR PLAINTIFFS**

Page 2 of 2

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK

COMMERCIAL DIVISION

RAÚL BRINDIS, and MARIO GOMEZ,

               Plaintiffs,

   -against-

TELEVISAUNIVISION, INC.,
CINDY HILL, individually and as agent of
TelevisaUnivision, Inc., and FRANK
LAFONTAINE, individually and as agent of
TelevisaUnivision, Inc.,

               Defendants.

Index No. _____

**VERIFIED COMPLAINT**

(Jury Trial Demanded)

Plaintiff Raúl Brindis and Mario Gomez, by and through their undersigned counsel, for their complaint against Defendants TelevisaUnivision, Inc., Cindy Hill, and Frank LaFontaine, allege as follows:

## NATURE OF THE ACTION

1. This is an action for damages arising from Defendants coordinated scheme to wrongfully terminate Plaintiffs' high-value employment relationship and destroy their professional reputation by falsely accusing them of serious ethical and criminal-adjacent misconduct—namely "payola/plugola"—and then using those accusations as a pretext to declare a "for cause" termination.

2. Texas substantive law governs Plaintiffs' contract and New York law governs tort claims, including fraud, civil conspiracy, tortious interference, defamation/business disparagement, intentional infliction of emotional distress, and organized unlawful activity, because Plaintiffs' Employment Agreement contains a Texas choice-of-law clause.

Page 1 of 25

3.      This action proceeds in New York because critical decision-making, compliance, and oversight functions were directed from New York by Defendants, and because related parties not amenable to jurisdiction in Texas remain active defendants there.

## PARTIES

4.      Plaintiff Raúl Brindis is an individual residing in Texas. Brindis was a longtime on-air radio personality employed by Univision Radio (a Texas-based Univision entity) for approximately 28 years until his abrupt termination in December 2023. Brindis's Spanish-language morning radio show, El Show de Raúl Brindis, was broadcast from Houston and syndicated to numerous markets across the United States – including New York City – making him one of the most recognized Hispanic radio hosts nationwide.

5.      Plaintiff Mario Gomez is an individual domiciled in Texas. At all relevant times, Gomez served as Executive Producer and was a key on-air personality for the syndicated radio show "El Show de Raúl Brindis." Gomez was also terminated by Defendants' under false pretenses and is jointly asserting claims arising from the same wrongful conduct described herein.

6.      **Defendant TelevisaUnivision, Inc. ("TelevisaUnivision")** is a Delaware corporation and the parent company of Univision's media businesses. TelevisaUnivision was formed via the 2022 merger of Univision Communications and Grupo Televisa's content business, creating a combined entity that owns the Univision broadcast network and many related media operations. TelevisaUnivision maintains its principal corporate offices in New York City – historically at 605 Third Avenue, New York, NY – effectively making New York the headquarters of its U.S. operations. It also maintains substantial operations in Miami, Florida, and Mexico City, Mexico. At all relevant times,

TelevisaUnivision controlled and directed the business of Univision Radio (the Texas entity that formally employed Brindis) as an agent or instrumentality of TelevisaUnivision's centralized corporate management.

7. **Defendant Cindy Hill** ("Hill") is an individual who, at all relevant times, served as Vice President of Content and Industry Relations/Content, Industry & Affiliate Relations for Defendants' radio operations and exercised managerial authority over programming/content matters relevant to Plaintiffs and their show. Hill is sued individually and in her capacity as an agent of TelevisaUnivision.

8. **Defendant Frank LaFontaine** ("LaFontaine") is an individual who, at all relevant times, served as Senior Vice President, Global Compliance for TelevisaUnivision and personally led, endorsed, and/or ratified the "investigation" used as the stated basis to terminate Plaintiffs. LaFontaine is sued individually and in his capacity as an agent of TelevisaUnivision.

## JURISDICTION AND VENUE (NEW YORK PROCEDURE)

9. This Court has subject-matter jurisdiction pursuant to Article VI, § 7 of the New York State Constitution. This Court has personal jurisdiction over TelevisaUnivision pursuant to CPLR §§ 301 and 302.Venue is proper in New York County pursuant to CPLR §§ 503 and 509.

10. Independently, the Court has specific personal jurisdiction over TelevisaUnivision under New York's long-arm statute (CPLR 302(a)) because TelevisaUnivision transacted business and committed tortious acts in New York that give rise to the claims in this action. TelevisaUnivision, through its New York-based executives, actively directs business operations and employment decisions for its nationwide media subsidiaries.

TelevisaUnivision's New York office oversees, *inter alia*, compliance and human resources functions for the company's U.S. stations. For example, TelevisaUnivision owns and operates the flagship Univision Network (headquartered in New York) and engages in national advertising sales and content distribution out of New York. TelevisaUnivision executives in New York exercise decision-making authority over personnel and programming across local Univision entities, including Univision Radio in Texas.

11.     The decision to terminate Brindis's employment was orchestrated and approved by TelevisaUnivision's corporate management from New York.  The decision to end Brindis's show and employment was made by senior TelevisaUnivision officials in New York. The pretextual "compliance investigation" used to justify Brindis's firing was directed by TelevisaUnivision's Global Compliance department, which operates under the authority of TelevisaUnivision's New York-based leadership.  Specifically, TelevisaUnivision's Senior Vice President of Global Compliance, Frank LaFontaine, was a key actor in the investigation and termination decision. LaFontaine, as global compliance head, is a TelevisaUnivision executive (formerly of Comcast) tasked with enforcing corporate ethics and policy uniformly across the company's stations. In doing so, he and other TelevisaUnivision compliance and HR executives (who report to TelevisaUnivision's headquarters) directed the investigation of Brindis and ultimately approved the firing, all under corporate authority emanating from New York.  Brindis's claims arise directly from these New York-based acts.

12.     Univision Radio's actions in Texas with respect to Brindis's employment were entirely at the direction and control of TelevisaUnivision's New York headquarters. The Texas entity functioned as an agent carrying out the instructions of its New York parent.

TelevisaUnivision's dominance over Univision Radio is evidenced by overlapping leadership: for example, Jesús Lara, the President of Univision Radio, simultaneously serves as an executive of TelevisaUnivision, Inc. TelevisaUnivision also guarantees obligations and makes strategic decisions for its radio subsidiaries. Therefore, any act by Univision Radio in terminating Brindis was in reality the act of TelevisaUnivision, effectuated through its agent. Under CPLR 302, TelevisaUnivision is subject to jurisdiction for the conduct of its agents, especially where (as here) those agents were executing policies formulated in New York.

13. TelevisaUnivision also committed tortious acts within New York by formulating and approving the fraudulent pretext for Brindis's termination from its New York offices. The decision to terminate under false pretense was made in New York, and the misleading justification was communicated from TelevisaUnivision's corporate hierarchy. This provides an independent basis for specific jurisdiction under CPLR 302(a)(2).

14. In sum, TelevisaUnivision purposefully availed itself of the privilege of conducting business in New York and directed the specific conduct at issue from New York. Exercising personal jurisdiction over TelevisaUnivision in New York comports with due process and New York's long-arm statute. Venue is proper in this Court because TelevisaUnivision does business in New York County and a substantial part of the events giving rise to the claims occurred through Defendants' New York-based corporate offices (CPLR 503, 509).

## GOVERNING SUBSTANTIVE LAW (TEXAS)

15. Plaintiffs' Employment Agreement contains a **Texas choice-of-law clause** providing that the Agreement is governed and construed under Texas law.

16. Accordingly, Texas substantive law governs Plaintiffs' breach of contract claim only. New York substantive law governs all tort and non-contract claims alleged herein.

## FACTUAL ALLEGATIONS

### A. Brindis's Exemplary Career with Univision Radio

17. **Decades of Service** – Brindis was a loyal and high-performing Univision Radio host for 28 years. Based in Houston, he hosted El Show de Raúl Brindis, a top-rated Spanish-language morning program renowned in the Latino community. His show was syndicated to major cities including Los Angeles, Dallas, Chicago, New York, and many others. Brindis became one of Univision's most prominent radio personalities, and his program was a significant revenue draw in multiple markets. Through his long tenure, Brindis consistently honored his contractual and performance obligations, helping Univision Radio build a strong audience and advertiser base. By late 2023, Brindis had roughly one year remaining on his employment contract with Univision Radio. Mario Gomez served as Executive Producer and was a key on-air personality for El Show de Raúl Brindis and his employment was terminated in connection with the same events described herein.

### B. Centralized Corporate Control by TelevisaUnivision

18. TelevisaUnivision controlled and directed the business operations, compliance oversight, and employment decisions of Univision Radio through centralized corporate management headquartered in New York.

19. TelevisaUnivision maintains its principal corporate offices in New York City historically at 605 Third Avenue, New York, NY, effectively making New York the headquarters of its U.S. operations. At all relevant times, TelevisaUnivision controlled and directed the business of Univision Radio (the Texas entity that formally employed Brindis) as an agent or instrumentality of TelevisaUnivision's centralized corporate management.

20. **Sudden Termination –** On or about December 15, 2023, without prior warning, Univision Radio removed *El Show de Raúl Brindis* from the air and terminated Brindis's employment. The termination was abrupt and handled in a humiliating manner – Brindis was accompanied out of the building as if he were an intruder, according to accounts. No specific cause for the firing was given to Brindis at that time. The cancellation of the show and the firing of its host came as a shock to Brindis's thousands of listeners and to industry observers, since Brindis was a marquee talent for Univision Radio.

21. **Pretext of Compliance Investigation** – TelevisaUnivision attempted to justify Brindis's firing under the guise of a compliance and policy violation. In the months leading up to the termination, TelevisaUnivision's corporate compliance department (headed by SVP Frank LaFontaine in New York) conducted an ad hoc internal investigation into Brindis, looking for any purported misconduct or breach of company policy. This investigation was not part of the ordinary course of station-level operations, but rather a top-down initiative from TelevisaUnivision's Global Compliance group. Ultimately, TelevisaUnivision seized on alleged contract and policy infractions as a pretext to terminate Brindis "for cause." In communications to Brindis and in subsequent legal positions, the company claimed that Brindis failed to comply with all terms of his employment agreement – implicitly asserting some wrongdoing on his part as justification for termination. Brindis categorically denies any material misconduct; he

contends these compliance allegations were fabricated or grossly exaggerated. Notably, TelevisaUnivision has never publicly specified what "terms and conditions" Brindis supposedly violated, reinforcing that the investigation's findings were a mere pretense.

22. **Motivation – Cost Cutting –** In reality, Brindis's termination was the result of high-level financial considerations and corporate restructuring, not any legitimate compliance issue. TelevisaUnivision was undergoing budget reductions and cost-cutting measures in late 2023 amid a downturn in the media industry Corporate executives in New York decided that eliminating or replacing personel would help in their big picture "remedy financial problems in the company". Indeed, immediately after Brindis's ouster, TelevisaUnivision filled his time slot with other talent who were more affordable (lower-paid), confirming the cost-cutting motive. **Plaintiffs strongly believe that if these allegations had not been brought up about that, they would not have been the subject of cost cutting measures because of the success of the show and the amount of revenue that it generated. Why kill the goose that laid the golden eggs?**

23. **Centralized Decision by New York Executives –** The decision to terminate Brindis was not made by local station management in Texas alone; it was approved – if not dictated – by TelevisaUnivision's top executives and departments. Brindis was a major talent with a multi-market presence and a written contract, so any termination for cause required concurrence from corporate legal and HR leadership at TelevisaUnivision.

### C.   Role of Defendant Frank LaFontaine

24. Defendant Frank LaFontaine served as Senior Vice President, Global Compliance for TelevisaUnivision and exercised authority over compliance investigations nationwide. Defendant LaFontaine authored and circulated an Investigative Report and Recommendation. TelevisaUnivision's Chief Executive Officer and executive leadership

team were also informed of, and collectively made the termination decision, given Brindis's prominence.  By the time Brindis was fired, the directive had come "from above" – i.e., from TelevisaUnivision's corporate hierarchy – and Univision Radio in Texas was simply tasked with carrying it out.  Univision Radio's President, Jesús Lara, was himself a TelevisaUnivision, Inc. officer, underscoring that the parent company's personnel were making and executing these decisions. Plaintiffs were not notified of this and had no confirmation until discovery was provided in June 2025. They did not give the Plaintiffs a reason for the termination. In short, TelevisaUnivision's New York executives treated Brindis's termination as a corporate decision affecting a company-wide asset (a nationally syndicated show), rather than a local HR matter.

### D. Role of Defendant Cindy Hill

25. Defendant Cindy Hill served as Vice President of Content and Industry Relations/Content, Industry & Affiliate Relations and exercised managerial authority over programming and content decisions affecting Plaintiffs. Defendant Cindy Hill ('Hill') is an individual who, at all relevant times, served as Vice President of Content and Industry Relations/Content, Industry & Affiliate Relations for Defendants' radio operations and exercised managerial authority over programming/content matters relevant to Plaintiffs and their show.

26. **Brindis Suffers Harm and Files Suit –** As a result of the termination, Brindis has incurred significant damages. He lost the benefit of the final year of his contract – including salary and expected bonuses – and his career and reputation were tarnished by the implication that he was terminated for misconduct. Brindis has stated that he "suffered great harm" due to the company's breach of contract and the bad-faith

allegations about his compliance. In early 2024, Brindis commenced legal action against TelevisaUnivision and its affiliates, asserting claims for breach of contract, fraud, civil conspiracy, and other torts. In that lawsuit (of which this Complaint is a part), Brindis alleges that TelevisaUnivision concocted false pretexts to fire him when the real reason was an internal cost-cutting agenda. TelevisaUnivision, for its part, has denied wrongdoing but continues to maintain – without substantiation – that Brindis did not fully uphold his end of the employment agreement. The emerging record will demonstrate that TelevisaUnivision's justifications are meritless, and that Brindis's ouster was an unlawful, pretextual firing driven by corporate economics.

### E. The "Payola/Plugola" Narrative and the LaFontaine Report

27. In or around 2023, Defendants began building a narrative accusing Brindis of "unauthorized inserts of songs" and "payola violations" as a purported basis to terminate Plaintiffs "for cause."

28. Defendant LaFontaine authored and circulated an Investigative Report and Recommendation (the "LaFontaine Report") that was completely false.

29. The LaFontaine Report came to conclusions on false testimony by intentionally ignoring the truth.

30. Plaintiffs had absolutely no knowledge of this and were not notified of this and had no confirmation until June 2025. Note: Defendants did not give the Plaintiffs a reason for the termination.

## F. The Termination and the Pretext

31.     On or about December 15, 2023, Defendants terminated Brindis's employment and removed his show from the air, claiming termination "for cause" or otherwise relying on the "payola/plugola" narrative as a justification.

32.     Brindis denied he engaged in payola or plugola or any quid-pro-quo exchange and denied receiving any "thing of value" or improper consideration in exchange for airplay.

33.     Upon information and belief, Defendants' true motive was cost-cutting and/or strategic programming realignment, and the "payola/plugola" narrative was deliberately invoked as a pretext to justify a pre-determined termination decision and to evade contractual obligations owed to Brindis.

## G. "No Conclusive Evidence"

34.     There is no conclusive evidence of payola or plugola supporting the accusations used to justify Plaintiffs' termination.

35.     The fact that there is no conclusive directly evidence supports Plaintiffs position that Defendants actions were reckless, and/or knowingly false.

36.     Critical purported "witness" foundations were denied and/or contradicted, including denials that any quid-pro-quo conversation occurred and denials that any discount or "thing of value" existed or was exchanged.

37.     Although no conclusive evidence supported the allegations, Defendants proceeded to accuse Brindis of serious misconduct and to terminate him "for cause," thereby causing him substantial economic harm and material reputational injury.

**H. Harm to Plaintiffs**

38. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have sustained substantial damages, including but not limited to: (i) loss of contractual compensation and benefits through the remainder of the contract term; (ii) loss of bonuses and incentive compensation; (iii) loss of career and business opportunities; (iv) harm to Plaintiffs' reputation, goodwill, and professional brand; (v) mental anguish and emotional distress; and (vi) out-of-pocket expenses incurred to mitigate damages and pursue appropriate relief.

## GOVERNING SUBSTANTIVE LAW

39. The Employment Agreement between Brindis and Univision Radio contains a choice-of-law clause providing that the agreement "shall be governed by and construed in accordance with the internal law of the State of Texas," without regard to conflict-of-law principles. Accordingly, Texas substantive law governs Plaintiff's first cause of action for breach of contract, which arises directly from that Employment Agreement and its termination.

40. New York substantive law governs all of Plaintiffs' other causes of action, which sound in tort or other non-contract theories. Plaintiffs' tort claims address conduct that was orchestrated from New York and implicate New York's interests; moreover, those claims are not governed by the contractual choice-of-law clause. Therefore, for each tort and quasi-contract claim in this Complaint, New York law provides the substantive rules of decision.

# FIRST CAUSE OF ACTION

## (Breach of Contract – Texas Substantive Law)

41.     Plaintiff, Brindis, repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein Plaintiff and Univision Radio were parties to a written Employment Agreement (the "Agreement") that was in effect at the time of Brindis's termination. Plaintiff fully performed his obligations under the Agreement and was ready, willing, and able to continue performing.

42.     The Agreement provided that Brindis would serve as a radio host through the end of 2024, and it included a provision that the contract would be governed by Texas law. Brindis at all times fulfilled his obligations under the Agreement and was ready, willing, and able to continue performing.  Defendant TelevisaUnivision, as the corporate parent directing and controlling the termination decision, materially breached the Agreement by terminating Brindis without valid cause and before the end of the contract term.

43.     The purported justification given for Brindis's termination i.e. alleged misconduct or policy violations was false and pretextual and did not constitute "cause" under the Agreement. As a direct result of Defendants' breach of contract, Brindis has suffered significant damages. These damages include, without limitation, the loss of salary, bonuses, and benefits he would have earned during the remainder of the contract, as well as other consequential losses flowing from the premature and unjustified termination of his employment.

# SECOND CAUSE OF ACTION

## (Breach of the Implied Covenant of Good Faith and Fair Dealing – Texas Law)

44.    Plaintiff Brindis repeats and realleges all prior paragraphs.

45.    The Employment Agreement vested Defendants with discretion regarding compliance investigations and termination for cause.

46.    Defendants abused that discretion by acting dishonestly, manufacturing a false compliance narrative, and exercising contractual authority in bad faith to deprive Brindis of the benefits of the Agreement.

47.    Even if Defendants contend no express provision was violated, their conduct violated the spirit and purpose of the Agreement and breached the **implied covenant of good faith and fair dealing** under Texas law.

## THIRD CAUSE OF ACTION

### (Fraud / Fraudulent Misrepresentation – New York Law)

48.    Plaintiff, Brindis, repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein

49.    Defendants, acting by and through its officers and agents, made false representations of material fact concerning Plaintiffs. Specifically, Defendants falsely asserted that Brindis had committed serious misconduct and violated company policies (including payola and sponsorship identification rules) and used these false claims as the stated reason for terminating his employment. Defendants knew these representations were false – they were contrived as a pretext to justify the firing – and made them with the intent that Plaintiff and others would accept and rely upon them. There was no conclusive evidence of payola or plugola supporting the accusations used to justify Plaintiffs' termination. Defendants' misrepresentations were allegedly communicated to Plaintiffs and definitely

to third parties (including other employees, industry stakeholders, and prospective employers of Brindis). Defendants intended that Plaintiffs and others rely on these misrepresentations to justify termination and damage Plaintiffs' reputations.

50. Plaintiffs have been injured as a result of these fraudulent misrepresentations. In terminating Plaintiffs for alleged "cause" based on fabricated grounds, Defendants deprived Brindis of contractual and economic benefits and severely damaged his professional reputation. Brindis also reasonably relied on Defendants' misrepresentations to his detriment in that he was induced to believe that Defendants' actions might be justified and was initially prevented from discovering the true motive for his firing. Defendants' conducts were willful, malicious, and in conscious disregard of Plaintiffs' rights, entitling Plaintiffs to punitive damages under New York law.

51. Plaintiffs suffered damages as a proximate result.

## FOURTH CAUSE OF ACTION
### (Aiding and Abetting Fraud)

52. Hill and LaFontaine had actual knowledge of the fraud and provided substantial assistance.

## FIFTH CAUSE OF ACTION
### (Civil Conspiracy – New York Law)

53. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54. Defendant TelevisaUnivision, together with one or more unknown co-conspirators (including certain of its executives or agents and other persons not yet identified), agreed and conspired to commit wrongful acts against Plaintiffs as alleged herein. The

participants in this conspiracy shared a meeting of the minds to accomplish unlawful objectives, including defrauding Plaintiff, harming his career, and interfering with his business expectancies.

55. In furtherance of the conspiracy, Defendants and its co-conspirators engaged in overt tortious acts, such as manufacturing a false pretext to terminate Plaintiff, disseminating defamatory accusations about Plaintiff's alleged misconduct, and orchestrating post-termination retaliation (including the sabotage of Plaintiff's new radio venture, as described below). These overt acts were committed in furtherance of the conspiracy, including authoring and relying upon the LaFontaine Report. As a direct and proximate result of the conspiracy and the acts committed in furtherance thereof, Plaintiff has suffered damages, including lost income and opportunities and damage to his reputation. Defendant is jointly and severally liable for the torts committed by its co-conspirators in furtherance of the conspiracy.

## SIXTH CAUSE OF ACTION

### (Tortious Interference with Contract – New York Law)

56. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57. Plaintiffs had valid contractual relationships. Defendants willfully and intentionally interfered with Plaintiffs' contract by manufacturing, endorsing, and/or ratifying a false or recklessly asserted 'for cause' narrative and inducing termination under that narrative.

58. After Plaintiff's termination from Univision, Plaintiff entered into a contractual agreement with a new employer, Spanish Broadcasting System ("SBS"), to host a new radio show in early 2025. Defendants were aware of Plaintiff's contractual relationship

and expected economic benefit with SBS.

## SEVENTH CAUSE OF ACTION

### (Tortious Interference with Prospective Economic Advantage)

59. Defendants interfered with Plaintiffs' prospective business relationships using fraud, defamation, and sabotage.

## EIGHTH CAUSE OF ACTION

### (Defamation and Business Disparagement – New York Law)

60. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein. Defendants published and/or caused to be published false statements accusing Plaintiffs of payola/plugola and related misconduct—statements that imputed unethical and criminal-adjacent conduct and tended to injure Plaintiffs' reputation and profession. These statements include, but are not limited to, assertions that Plaintiffs engaged in unethical or illegal conduct during his tenure (such as violating federal payola laws and company policies) and that his termination was due to misconduct and integrity issues on his part. Such statements of fact were false and made with actual malice or reckless disregard.

61. These defamatory statements injured Plaintiffs in their trade, business, and profession, as they impugn their honesty, ethics, and professional competence. The statements constitute defamation *per se* under New York law, because they tended to expose Plaintiffs to public contempt and to harm them in their profession as a radio broadcaster. Additionally, by making false allegations that undermine the quality or legality of Plaintiffs' business practices (such as accusing him of payola violations), Defendants' committed business disparagement (injurious falsehood), causing special damages to

Plaintiffs' economic interests. As a proximate result of Defendants' defamation and disparagement, Plaintiffs has suffered substantial harm, including damage to their reputation and goodwill, loss of income and future business opportunities, and other pecuniary losses.

## NINTH CAUSE OF ACTION

### (Aiding and Abetting Defamation)

62. Hill and LaFontaine substantially assisted the defamatory publication with knowledge of falsity and with regard to other causes of action.

## TENTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress – New York Law)

63. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

64. Defendants engaged in extreme and outrageous conduct intentionally or with reckless disregard for the near certainty that such conduct would cause Plaintiffs severe emotional distress. Defendants' outrageous conduct included orchestrating Plaintiffs' abrupt and degrading termination on false pretenses, falsely impugning Plaintiffs' character and integrity with fabricated allegations of misconduct (both within the company and publicly), and coordinating retaliatory acts aimed at destroying Plaintiffs career prospects after their termination (such as the sabotage of his new broadcasting venture). This conduct is so egregious and beyond the bounds of decency that it is utterly intolerable in a civilized community.

65. As a direct and foreseeable result of Defendants' extreme and outrageous acts, Plaintiffs suffered severe emotional distress. Plaintiffs have experienced, among other things,

humiliation, anguish, and anxiety, as well as damage to their mental and emotional well-being. Defendants' actions were a substantial factor in causing these injuries. Accordingly, Defendant is liable for intentional infliction of emotional distress under New York law.

## ELEVENTH CAUSE OF ACTION

### (Negligent Infliction of Emotional Distress – New York Law)

### Against All Defendants

66. Plaintiffs repeat and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

67. Defendants owed Plaintiffs a duty to exercise reasonable care in the manner it treated them during and after their employment so as not to unreasonably endanger their emotional well-being. It was foreseeable that mishandling Plaintiffs termination or maligning their reputation without basis would cause them severe emotional distress.

68. Defendants breached this duty of care. Defendants' negligent acts and omissions include conducting a grossly improper and unfair investigation of Plaintiffs, terminating them in a needlessly harsh and injurious manner, and negligently allowing or enabling false accusations about Plaintiffs to be circulated (thereby failing to protect him from foreseeable harm to his emotional state). Although Defendant's actions were intentional in part, and thus outrageous as alleged above, they were also negligent in that Defendants failed to exercise even slight care to avoid causing unnecessary emotional harm to Plaintiffs in the process of ending their employment and afterward.

69. As a proximate result of Defendants' negligence, Plaintiffs suffered severe emotional distress and resultant harms. At least one of the Plaintiff's experienced serious mental

Case 1:26-cv-04149    Document 1-1    Filed 05/18/26    Page 25 of 30

anguish and emotional pain, which have required medical or therapeutic attention and have adversely affected his quality of life. Defendants are therefore liable for the negligent infliction of emotional distress upon Plaintiffs.

## TWELFTH CAUSE OF ACTION

### Prima Facie Tort
### Against All Defendants

70.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

71.   Defendants intentionally inflicted harm upon Plaintiffs without excuse or justification, by means of otherwise lawful acts that were committed solely out of disinterested malevolence.

72.   In particular, Defendants engaged in a deliberate and retaliatory course of misconduct against Plaintiffs, as described throughout this Complaint, for the sole purpose of injuring Plaintiffs and damaging their professional reputations and livelihoods.

73.   Defendants' actions were motivated exclusively by malice and a desire to harm Plaintiffs, and not by any legitimate business, compliance, or operational reason. The wrongful acts giving rise to this prima facie tort include, inter alia, the manufacture and propagation of a false compliance narrative, the misuse of an internal investigation as a pretext for termination, post-termination interference with Plaintiffs' professional opportunities, and the dissemination of baseless and damaging accusations impugning Plaintiffs' integrity.

74.   While certain aspects of Defendants' conduct may not fit neatly within traditional categorical torts, the overriding and unifying characteristic of Defendants' actions was the intentional and malicious targeting of Plaintiffs for harm, without justification and for no purpose other than to injure them.

Case 1:26-cv-04149    Document 1-1    Filed 05/18/26    Page 26 of 30

75. As a direct and proximate result of Defendants' prima facie tortious conduct, Plaintiffs suffered specific and measurable losses, including but not limited to lost current and future income, lost professional opportunities, costs incurred in responding to Defendants' wrongful acts, and other special damages in an amount to be determined at trial.

## THIRTEENTH CAUSE OF ACTION

### Negligent Hiring, Supervision, or Retention (New York Law)

76. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

77. At all relevant times, Defendants had a duty to exercise reasonable care in the hiring, supervision, and retention of its employees and agents, so as to prevent those individuals from engaging in unlawful or harmful conduct to the detriment of others, including the Plaintiffs. This duty was breached when Defendants negligently hired and/or retained /or failed to adequately supervise certain personnel who were responsible for the investigation and termination of Plaintiffs.

78. Specifically, Defendants placed or retained individuals in positions of authority (such as compliance officials or executives) despite knowing, or having reason to know, that these individuals were likely to act in a manner that could harm employees like Plaintiff. Defendants knew or should have known that those managing the investigation and termination of Plaintiffs (e.g., Mr. LaFontaine and others involved) were predisposed to disregard proper procedures and employee rights, or to act maliciously, yet Defendants failed to supervise or restrain them.

79. Defendants' negligent hiring, supervision, and/or retention of unfit personnel was a proximate cause of the injuries suffered by Plaintiffs. Had Defendants exercised due care

in managing its employees and agents, the wrongful acts against Plaintiffs (including the defamatory allegations, the pretextual firing, and the post-termination sabotage) would not have occurred. Accordingly, Defendants are liable for the damages sustained by Plaintiffs as a result of its negligence in hiring, supervising, or retaining the individuals who engaged in the tortious conduct described above.

## FOURTEENTH CAUSE OF ACTION

### Alternatively: Breach of the Implied Covenant of Good Faith and Fair Dealing

### (New York Law)

80.     Plaintiff, Brindis repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

81.     Under New York common law, every contract contains an implied covenant of good faith and fair dealing. This covenant imposes a duty on each contracting party not to take any action that would deprive the other party of the benefits of the agreement or undermine the agreement's spirit. Although the Employment Agreement in this case is governed by Texas law for purposes of Plaintiff's breach of contract claim, Plaintiff pleads in the alternative that Defendant's conduct also violated the implied covenant of good faith and fair dealing under New York law.

82.     Plaintiff had a reasonable expectation that, so long as he fulfilled his obligations under the Employment Agreement, Defendants would not act in a manner that deliberately sabotaged or nullified the core benefits of the contract. However, Defendants breached the implied covenant of good faith and fair dealing by acting in bad faith and abusing its contractual discretion in terminating Plaintiff. Defendants' use of a fabricated cause to fire Plaintiff – ostensibly under the contract's "for cause" provision – was done in bad

Case 1:26-cv-04149 Document 1-1 Filed 05/18/26 Page 28 of 30

faith to avoid its contractual responsibilities (such as paying out the remainder of Plaintiff's salary) and to injure Plaintiff. Even if Defendant's actions did not technically breach an express provision of the contract (which Plaintiff maintains they did, as alleged in Count I), those actions were so lacking in honesty and fairness that they violated Defendant's implied duty of good faith. Defendants' use of a fabricated cause to fire Plaintiffs—ostensibly under the contract's 'for cause' provision—was done in bad faith to avoid its contractual responsibilities and to injure Plaintiffs.

83. As a result of Defendants' breach of the covenant of good faith and fair dealing, Plaintiff was deprived of the fruits of his contract and suffered damages. These damages include the compensation and benefits that he lost due to the bad-faith termination, as well as reputational and other consequential harm proximately caused by Defendants' unfair dealing. Defendants are liable for these damages under New York law.

## FIFTEENTH CAUSE OF ACTION
### (Unjust Enrichment)

84. TelevisaUnivision unjustly retained benefits generated by Plaintiff Brindis while avoiding contractual obligations.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Raúl Brindis and Mario Gomez demand judgment in their favor and against Defendants, jointly and severally, as follows:

(i) **Compensatory Damages:** An award of compensatory damages in an amount to be determined at trial, including (but not limited to) the unpaid compensation and benefits due under Brindis's contract, front pay and other expectancy damages, and damages for harm to Brindis's professional reputation and career, together

Case 1:26-cv-04149 Document 1-1 Filed 05/18/26 Page 29 of 30

with pre- and post-judgment interest as allowed by law.

**(ii)** **Punitive Damages:** An award of punitive damages in an amount sufficient to punish Defendants for their willful, malicious, reckless, and fraudulent conduct and to deter such conduct in the future, to the extent permitted under New York law.

**(iii)** **Attorneys' Fees and Costs:** An award of Plaintiffs' reasonable attorneys' fees and costs, and disbursements, to the extent permitted by law.

**(iv)** **Such Other and Further Relief:** Awarding such other and further relief as the Court deems just and proper under the circumstances.

Plaintiffs' hereby reserve the right to amend this Complaint to conform to the evidence and to add or refine causes of action or remedies as appropriate.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: February 06, 2026
    New York, New York

Respectfully submitted,

**LAW OFFICE OF BOBBY GARCIA, P.C.**
P.O. Box 5729
McAllen, Texas 78502
Telephone:     (956)668-7400
Facsimile:     (956)668-7500
E-Service email: litigation@bobbygarcia.com

_____
**BOBBY GARCIA**
Texas State Bar No. 07645210
New York SBN: 5387485
Federal Bar No.: 14531
**ATTORNEYS FOR PLAINTIFF**

Page 24 of 25

26 of 27

and
**LESLEY MITCHELL BRIONES**
Texas State Bar No. 24060292
Lesley Briones
c/o Adán Briones
9 Greenway Plaza, Ste. 2800
Houston, TX 77046
E-Service Email: lesleybriones@gmail.com
**CO-COUNSEL FOR PLAINTIFF**